```
        IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF ARKANSAS
                 FAYETTEVILLE DIVISION
```

**JASON A. BATES**                                              **PLAINTIFF**

**v.**                      **Case No.: 09-5188**

**SHERIFF KEITH FERGUSON ET AL.**                              **DEFENDANTS**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Jason A. Bates, a resident of Everton, Arkansas, filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

### I.   Background

As this case is before the Court on Defendants' Motion for Summary Judgment, the Court will recite the facts pled by the non-moving party, the Plaintiff. Plaintiff has brought this action against the Defendants: Sheriff Keith Ferguson, Captain Holly, Dr. Huskins, Nurse Marsha Smith, and Lt. Carter, alleging that during his incarceration at the Benton County Detention Center ("BCDC") he was denied adequate medical care, he was verbally threatened, and he did not receive adequate responses to his grievances.

Plaintiff was booked into the BCDC on April 22, 2009. (Doc. 33, ¶1). On August 5, 2009 and August 6, 2009, Plaintiff was erroneously given the drug Dilantin, which has the generic name Phenytoin,[1] rather than his prescription medication. (Doc. 33, ¶3). Plaintiff states

---

[1] Dilantin (Phenytoin) is a used to control certain types of seizures. PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000549/ (last visited July 22, 2011).

he was not informed as to the true dosage quantity, and Defendants assert he was given two 100 milligram doses both days. (Id.; Doc. 28). Plaintiff states he actually only took two doses of the Dilantin. (Doc. 33, ¶6(a)). Moreover Plaintiff states in his Response that August 5 and 6, 2009, were the only dates when he was given incorrect medication. (Id., ¶3(a)). The incorrect medication was given by Deputy Kwyzla, Deputy Bailey, and Deputy Potter, all non-parties to this matter. (Id., ¶4(a)).

Plaintiff states that on August 5, 2009, he was told to take someone else's medications[2], and the deputy dispensing the medication asked if Plaintiff was refusing a direct order. (Doc. 1, ¶V). Plaintiff stated to the deputy that the medication was not his. (Id.) Deputy Kwyzla instructed Plaintiff to take the medication anyway. (Id.)

On the next day, August 6, 2009, Deputy Collins brought Plaintiff out of his cell for medication call and gave him the same incorrect medication again. (Id.) Plaintiff then initiated the grievance procedure available at the BCDC and the problem stopped. (Id.) However, Plaintiff never received sufficient answers to his questions regarding the medications. (Doc. 1, ¶V).

On August 6, 2009, Plaintiff requested medical care and stated that, after taking the incorrect medication, he was suffering severe headaches. (Doc. 33, ¶4). Plaintiff also stated he was currently taking acetaminophen and asked if anything else could be done, or if the Tylenol could be increased and the duration of that prescription

---

[2] Plaintiff's name is Jason Bates. At the relevant time of his incarceration, another inmate by the name of William Bates was incarcerated in the same pod. It appears the identical last names of both of these inmates caused the confusion regarding their medication.

extended. (Id.) Defendant Nurse Smith stated she would continue the Tylenol and that there were no side effects with the medication Plaintiff was inadvertently given. (Id.; Doc. 28). Plaintiff states he had migraine strength headaches, dizziness with constant nausea, and ringing in his ears, which was a constant irritation. (Doc. 33, ¶10). While Plaintiff had made prior medical complaints of headaches, he attributes the severity of the headaches on August 5 and 6, and his other symptoms, to taking the incorrect medication. (Id., ¶¶8,9). Dr. Huskins saw the Plaintiff on August 10, 2009. (Id., ¶11).

On August 15, 2009, Plaintiff was again given the wrong medication, but did not ingest the medication, rather he informed Deputy Potter the medication was incorrect and he was then given the correct medication. (Doc. 1 at 8). Plaintiff also states in his Complaint that the incorrect medication was distributed by Deputy Potter on August 30, 2009, and he was questioned about the incident the next day, on August 31, 2009, by Deputy Elkinton with Sgt. Vaughn and Deputy Lebrault present. (Doc. 5). During the questioning, Plaintiff alleges he was threatened with disciplinary procedures if he abused the grievance system. (Id.) Plaintiff also filled out several grievances regarding this issue. (Id.)

On August 30, 2009, the Deputy called for "Bates" over the intercom in an adjoining cell at the noon medication call, and Plaintiff heard the call in his cell and went to receive medication, forgetting he did not take any medications at noon. (Id.) Again, Plaintiff was given the medications of another inmate. (Id.) Plaintiff then filed several grievances on the issue, which were responded to by an unknown staff member, stating that Plaintiff was not given the incorrect medication

on August 30, 2009, and that the grievances were unfounded.  (Doc. 5). Plaintiff indicates he suffered heartburn from the incorrect medication. (Id.)  Plaintiff was then seen by Dr. Huskins on September 2, 2009, for medical complaints including heartburn.  (Doc. 28).  Plaintiff was prescribed antacid.  (Id.)

## II.  Applicable Law

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. See Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir. 1992).  The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III.  Discussion

### A.   Official Capacity Claims

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the Gorman case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. See Hafer v. Melo, 502 U.S. 21

-4-

>   (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Id. at 24-27. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. Id. at 25-27.

Gorman, 152 F.3d at 914.

A review of the Complaint (Doc. 1) in this case shows that Plaintiff has failed to specifically plead whether the named defendants were being sued in their official or individual capacities. However, in response to the Motion for Summary Judgment, Plaintiff stated he was suing Defendants in both their official and individual capacities. (Doc. 33, ¶21).

Plaintiff's official capacity claims are tantamount to suing Benton County. Official capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Because Monell specifically rejected liability based solely on respondeat superior, id. at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. Id. Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval

through the body's official decision making channels." Monell, 436 U.S. at 690-91.

Plaintiff in this case has neither made any allegations that there were unconstitutional policies or practices in Benton County, nor has he provided any evidence of the same.  In fact, in response to the Motion for Summary Judgment, when asked as to the custom or policy at issue, Plaintiff stated he "was not aware of any written policies at this time." (Doc. 33, ¶21).  As such, Defendants' Motion for Summary Judgment (Doc. 26) should be **GRANTED** as to all claims made by Plaintiff against Defendants in their official capacities.

### B.  Individual Capacity Claims

Plaintiff has made three individual capacity claims: that he was denied adequate medical care during his incarceration at the BCDC, that he was verbally threatened, and that his grievances were not adequately responded to by Defendants.

#### i.  Denial of Adequate Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. See Butler v. Fletcher, 465 F .3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Popoalii v. Correctional Med. Servs, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

In this case, Plaintiff maintains he was denied adequate medical care when he was given two doses of Dilantin on August 5 and 6, 2009.[3] Plaintiff does not contend that any of the Defendants intentionally dispensed the incorrect medication to him, only that he was provided with the medication belonging to another inmate with the same last name. These factual allegations do not support a claim of medical indifference.  See Walker v. Goodman, 2008 WL 2380959 (E.D. Ark. 2008)(holding Plaintiff failed to state a claim where the named defendant dispensed the incorrect medication and failed to ensure correct medication was dispensed).

At most, Plaintiff has stated a claim of negligence against Defendants based upon the medication error.  Negligence is not actionable in a Section 1983 case. See, e.g., Daniels v. Williams, 474 U.S. 327 (1986) (inmate who slipped on a pillow negligently left on jail stairs by a corrections officer was not "deprived of his liberty

---

[3] Due to Plaintiff's assertion at the summary judgment stage that these are the only dates when he was given the incorrect medication, these are the only dates the Court will consider. (Doc. 33, ¶3(a)).

-7-

interest in freedom from bodily injury"); Tucker v. Evans, 276 F.3d 999, 1002 (8th Cir. 2002) (holding negligence, even gross negligence, is insufficient to prove a violation of the Eighth Amendment). Deliberate indifference requires the reckless or callous disregard of a known, excessive risk of serious harm to the safety of the plaintiff or other inmates in the plaintiff's position. Id., 276 F.3d at 1001.

Accordingly, it is my recommendation that Defendants' Motion for Summary Judgment (Doc. 26) be granted as to Plaintiff's individual capacity claims for denial of medical care.

### ii.   Verbal Threats and Failure to Respond to Grievances

Plaintiff has alleged that he was verbally threatened with lockdown and other disciplinary consequences for misuse of the grievance system. As a threshold matter, the Court notes that there is no constitutional right to an intra-prison grievance system and that the failure to investigate or respond to a prisoner's grievances is not actionable under 42 U.S.C. § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)(finding no constitutional right violated by failure to process grievances). While retaliation for filing a grievance may state a constitutional claim, Plaintiff has made no such allegations of retaliation in this case.

Further, verbal abuse and threatening conduct is not actionable under Section 1983. See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985). The Eighth Circuit has held that a threat amounts to a constitutional violation only when it is so brutal or wantonly cruel as to shock the conscience. See Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986).

In this case, while the conduct of the deputies as alleged by Plaintiff may have been inappropriate, it does not rise to a constitutional dimension. Plaintiff did not allege any brutal or cruel threats, and he continued to write grievances, including grievances about the threatening conduct itself, after the incident. There is no indication or allegation by Plaintiff that the threats were such that would shock the conscience or that they led to any actionable unconstitutional conduct by any Defendant. Accordingly, I recommend Defendants' Motion for Summary Judgment be granted as to Plaintiff's individual capacity claims that he was threatened by the Defendants and that he did not receive adequate responses to his grievances.

**IV.  Conclusion**

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment (Doc. 26) be **GRANTED in its entirety**.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED** this **22nd day of July 2011**.

                                        */s/ Erin L. Setser*
                                        HON. ERIN L. SETSER
                                        U.S. MAGISTRATE JUDGE

-9-